**SO ORDERED.**

**SIGNED this 11th day of June, 2025.**



_____
Mitchell L. Herren
United States Bankruptcy Judge

**DESIGNATED FOR ONLINE PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE:<br><br>AMRO M. SAMY<br>DARLA G. SAMY,<br><br>                **Debtors.** | Case No. 24-11169<br>Chapter 11 |

**Memorandum Opinion and Order Granting U.S. Trustee's Motion to
Compel Debtors' Compliance with 11 U.S.C. § 345(b)**

Before the Court is a motion from the U.S. Trustee[1] asking the Court to compel Debtors Amro and Darla Samy to comply with 11 U.S.C. § 345(b).[2] Section 345(b) mandates certain precautions be taken to protect funds of the estate deposited or invested in entities that are not insured or guaranteed, "unless the

---

[1] Doc. 85. The U.S. Trustee appears by John Nemecek.

[2] Future statutory references are to the Bankruptcy Code, title 11, unless otherwise specified.

court for cause orders otherwise." Debtors oppose the motion.[3] Based on the current record, the Court concludes Debtors have not established cause to excuse their compliance with § 345(b) and grants the U.S. Trustee's motion to compel. Debtors are directed to diligently pursue compliance with § 345(b) and work with the U.S. Trustee to ensure the requirements of § 345(b) are met.

I. **Background and Procedural Facts**

Debtors filed their Chapter 11 bankruptcy petition on November 14, 2024, as a quick file, without supporting Schedules or their Statement of Financial Affairs. In Supplements to Amendments to these documents filed on January 23, 2025, Debtors disclosed the following financial accounts with balances stated as of the petition date:

- Savings account, Bank of Alexandria d/b/a AlexBank, Cairo, Egypt. $14,099.47 (709,957.77 EGP[4]).

- Certificate of Deposit, Bank of Alexandria d/b/a AlexBank, Cairo, Egypt. $39,750.60 (2,000,000 EGP).

- Certificate of Deposit, Bank of Alexandria d/b/a AlexBank, Cairo, Egypt. $39,750.60 (2,000,000 EGP).

- Certificate of Deposit, Bank of Alexandria d/b/a AlexBank, Cairo, Egypt. $99,376.50 (5,000,000 EGP).[5]

---

[3] Doc. 120. Debtors appear by their attorney David Prelle Eron.

[4] The Court will use the abbreviation "EGP" for Egyptian Pound, the official currency of the Arab Republic of Egypt.

[5] Doc. 92 p. 10. Debtors' previously filed Schedules disclosed a Certificate of Deposit and a checking account at Alex Bank, with a $25,000 value and unknown value, respectively. Doc. 66 p. 6.

2

Debtors' Schedule D also listed Alex Bank as a secured creditor with two separate claims:

- A claim of $24,370.61, secured by collateral of "CDs and Savings Account," with a collateral value of $192,977.17. The nature of the lien is listed as a loan to Amro Samy only, with a balance due of 1,225,417.30 EGP.[6]

- A claim of $23,924.16, secured by collateral of "CDs and Savings Account," with a collateral value of $192,977.17. The nature of the lien is listed as a loan to Amro Samy only, with a balance due of 1,202,968.68 EGP.[7]

The U.S. Trustee reports Alex Bank is not a member institution of the Federal Deposit Insurance Corporation.

Debtors' note the two smaller CDs matured on February 20, 2025, and the larger CD matures on September 13, 2026. Per their terms, the CDs automatically renew because the funds are collateral for a loan—if they were not renewed, the proceeds would automatically be applied to the loan. The savings account would be used in the same fashion. In addition, if a CD is withdrawn early, then Debtors would be required to pay an early withdrawal penalty. The CDs enjoy a high interest rate: 26% on the smaller two CDs and 18% on the larger CD. Amro Samy's family has held accounts with Alex Bank for decades, and the CDs were established on September 2, 2019. According to Debtors, Alex Bank was established in 1957.

At the status hearing on the U.S. Trustee's motion, Debtor's counsel reported Alex Bank had not been responsive to requests for information on closing the account or withdrawing the CDs. Both the U.S. Trustee and Debtor declined to put

---

[6] Doc. 92 p. 15.

[7] *Id.* p. 16. Debtors' previously filed Schedules did not disclose the loans with Alex Bank. *See* Doc. 66 p. 14-16.

3

on evidence in support of or in opposition to the motion and rested on their briefs filed to date.

## II. Analysis

A motion to compel compliance with § 345(b) is a core matter under 28 U.S.C. § 157(b)(2)(A) ("matters concerning the administration of the estate"), over which this Court may exercise subject matter jurisdiction.[8] Venue is proper in this District.[9]

Except for deposits or investments that are insured by the United States, § 345(b) directs the debtor in possession[10] to require from an entity in which estate funds are deposited a surety bond or collateralization of the deposit by approved securities, "unless the court for cause orders otherwise."[11] The U.S. Trustee asks

---

[8] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(G), and Amended Order of Reference, D. Kan. S.O. 13-1. *See also In re King Mountain Tobacco Co.*, 623 B.R. 323, 327 (Bankr. E.D. Wash. 2020) ("The parties' dispute regarding the application of Bankruptcy Code section 345 is statutorily 'core' and 'the action at issue stems from the bankruptcy itself.'" (quoting *Stern v. Marshall*, 564 U.S. 462, 499 (2011))).

[9] 28 U.S.C. § 1409(a).

[10] Section 1107(a) makes § 345 applicable to debtors in possession. 11 U.S.C. § 1107(a) ("a debtor in possession shall have all the rights . . . and shall perform all the functions and duties . . . of a trustee serving in a case under this chapter").

[11] Specifically, § 345(b) states: "Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested--(1) a bond--

(A) in favor of the United States; (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

(C) conditioned on-- (i) a proper accounting for all money so deposited or invested and for any return on such money; (ii) prompt repayment of such money and return; and (iii) faithful performance of duties as a depository; or (2) the deposit of securities of the kind specified in section 9303 of title 31; unless the court for cause orders otherwise."

4

this Court to compel compliance with § 345(b) regarding Debtors' Alex Bank holdings,[12] and Debtors oppose that motion, asking the Court to excuse compliance for "cause." "The Code does not define 'cause' for excusing compliance with the requirement that all funds be FDIC insured, collateralized, or bonded."[13]

Because no Code-based test for "cause" exists, bankruptcy courts have developed a "totality of the circumstances inquiry"[14] with multiple factors to determine cause. The typical scenario presented to a bankruptcy court by a debtor seeking an exception from § 345(b) for cause is a large business entity, whose funds are so significant they are above the FDIC-insured limit. For example, the leading case on "cause" under § 345(b) is *In re Service Merchandise Co.*, which enumerated a list of factors for courts to consider when assessing cause. The debtors in the *Service Merchandise Co.* case were large and sophisticated with "a complex cash management system," and relied on multiple banks and accounts "to handle millions of dollars" of funds flowing through them "on a daily basis."[15] The bankruptcy court considered the following factors when assessing cause:

1. The sophistication of the debtor's business;
2. The size of the debtor's business operations;
3. The amount of investments involved;

---

[12] Per 28 U.S.C. § 586(a)(3), the U.S. Trustee is directed to "supervise the administration of" all Chapter 11 cases.

[13] *In re Lodging Enters., LLC*, No. 24-40423, 2024 WL 4252773, at *2 (Bankr. D. Kan. Sept. 18, 2024).

[14] *In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). *See also In re King Mountain Tobacco Co.*, 623 B.R. at 332 ("The inquiry ultimately is a fact- and context-specific assessment of the appropriate result under the totality of the circumstances presented."); *In re Ditech Holding Corp.*, 605 B.R. 10, 20 (Bankr. S.D.N.Y. 2019) ("the Court will apply a totality of the circumstances test").

[15] *In re Serv. Merch. Co.*, 240 B.R. at 896.

5

> 4. The bank ratings (Moody's and Standard and Poor) of the financial institutions where debtor-in-possession funds are held;
> 5. The complexity of the case;
> 6. The safeguards in place within the debtor's own business of insuring the safety of the funds;
> 7. The debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
> 8. The benefit to the debtor;
> 9. The harm, if any, to the estate; and
> 10. The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.[16]

The court found "the debtors' ability to reorganize would not be materially affected by the failure of any one financial institution" and the debtors' request to be excused from the requirement of § 345(b) was "reasonable and well-founded."[17]

Similarly, another oft-cited case is *In re Ditech Holding Corp.*, which again dealt with large debtors and their affiliates and a cash management system consisting of approximately 1200 bank accounts and average daily balances of approximately $95 million.[18] Although the bankruptcy court found the debtors' business was large and sophisticated, its cash management system was complex, it would have been costly, time consuming, and risky to transfer the primary accounts to another institution, the accounts were integral to the debtors' operations, moving the accounts would be expensive and complex, and there was no meaningful risk of loss by leaving the accounts in non-§ 345(b) compliant accounts, the court ultimately declined to find cause for an exception from § 345(b) because of the high

---

[16] *Id.* As this is a multi-factor test, courts have concluded the "list is not exhaustive and any individual factor or combination of factors will not control." *In re King Mountain Tobacco Co.*, 623 B.R. at 332.

[17] *In re Serv. Merch. Co.,* 240 B.R. at 896-97.

[18] 605 B.R. 10, 12 (Bankr. S.D.N.Y. 2019).

**6**

value of the assets at issue, the risk of loss if there was any disruption to the accounts, and the bank at issue had agreed to collateralize the accounts if the debtors underwrote the cost of doing so.[19] The cost of compliance with § 345(b) was specifically noted in *Ditech Holding Corp.* as an insufficient basis to excuse compliance.[20]

Ultimately the factors listed in *Service Merchandise Co.* and analyzed in *Ditech Holding Corp.* are not particularly helpful in this case. The Samys are not a large business conglomerate. Debtors do have business interests, but the funds at issue are not related to those business interests or those businesses' operations. Debtors' ability to reorganize would probably not be significantly impacted by the failure of Alex Bank and the loss of the funds at issue. If there is no failure of the bank, Debtors (and their creditors) likely benefit overall by keeping the funds where they are until an opportune time to withdraw them occurs. However, it may harm Debtors' estate to withdraw the funds to move them if there are associated fees or if some portion of the funds were seized by Alex Bank to repay past loans made to Debtors. The problem is the Court has no actual evidence about any of these details. Based on the current record, there is no evidence beyond the conclusory statements of counsel about the alleged harm to the estate of complying with the statutory

---

[19] *Id.* at 20-22.

[20] An additional similar example is *In re Lodging Enterprises, LLC*, No. 24-40423, 2024 WL 4252773 (Bankr. D. Kan. Sept. 18, 2024). In *Lodging Enterprises, LLC*, the bankruptcy court concluded the debtors had not demonstrated cause for waiver of compliance with § 345(b) because "pursuing waiver to avoid the cost and inconvenience of compliance" was an insufficient basis for excusing compliance, especially because in that case the court concluded § 345(b) could be satisfied by obtaining surety bonds which would be a "cheap and simple" solution. *Id.* at *3.

7

mandate, no evidence of the safeguards in place for the funds or the cost or process to insure the funds if they were to remain in their current place, and no evidence of the stability of Alex Bank or its bank rating.

Considering all these factors and the paucity of the facts in the record, and after weighing the totality of the circumstances, the Court concludes no cause exists to excuse compliance at this time. The statute says the debtor in possession "shall require" the safeguards specified in § 345(b). There is no exception for an individual Chapter 11 debtor. There is no exception for a foreign bank account.[21] Debtors argue cause exists because liquidating the accounts or withdrawing the CDs early would not provide a net benefit to the estate and may carry penalties. Debtors' response indicates the CDs are earning high interest rates and are working to pay down the loan for which they are collateral. But the Court has an insufficient record to weigh and analyze the factors relevant to establishing cause for waiver of compliance with § 345(b). Even if there was a cost of compliance to the estate, as the cases discussed show, such cost is not a significant enough basis to excuse compliance. But again,

---

[21] The only case the Court could locate analyzing § 345(b) with respect to foreign bank accounts was published in 1991, prior to the modification of that section to excuse compliance for "cause." *See Matter of Interco Inc.*, 130 B.R. 301 (Bankr. E.D. Mo. 1991). In *Matter of Interco*, the debtors sought "special provisions for foreign banks," proposing maximum deposit levels at foreign banks with ratings above a certain level with a national bank rating agency, and proposing collateralizing foreign bank accounts with ratings below a certain level if the funds in the accounts exceeded given amounts. *Id.* p. 303. The bankruptcy court denied the request, stating: "The Debtors have provided no authority for the request to treat foreign banks differently from domestic banks. Nor has the Court's independent research disclosed any precedent for such disparate treatment. Debtors have chosen to avail themselves of the protection of Chapter 11 pursuant to the United States Bankruptcy Code. Thus, even though Debtors maintain deposits in foreign banks, they must develop investment guidelines which provide for collateralization in compliance with Section 345(b)." *Id.*

8

the Court has insufficient evidence concerning potential costs or how they would impact Debtors' bankruptcy estate.

Debtors also indicated at the hearing that Alex Bank had not been responsive to their inquiries, and Debtors had little control over the funds at issue. This argument cuts in favor of the Court requiring compliance, because a bank refusing to engage with a customer about funds belonging to that customer is not an indicator of safety and stability.

Further, the impetus for the "cause" exception to this section was *not* to deal with the type of debtors in this case. Although the exception to § 345(b)—i.e., the "unless the court for cause orders otherwise"—was added to the Bankruptcy Code to give courts "flexibility in addressing the challenges of strict compliance with the deposit and investment requirements of section 345,"[22] that flexibility was not meant to override the goal of protecting funds in some way. The legislative history contains the following:

> Section 345 of the Code governs investments of the funds of bankrupt estates. The purpose is to make sure that the funds of a bankrupt that are obligated to creditors are invested prudently and safely with the eventual goal of being able to satisfy all claims against the bankrupt estate. Under current law, all investments are required to be FDIC insured, collateralized or bonded. *While this requirement is wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, it can work to needlessly handcuff larger, more sophisticated debtors.* This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling *In re Columbia Gas Systems Inc.*, 33 F.3d 294 (3d Cir. 1994).[23]

---

[22] *In re Ditech Holding Corp.*, 605 B.R. at 17.
[23] H.R. Rep. 103-835, 103rd Cong., 2d Sess. 210 (Oct. 4, 1994) (emphasis added).

**9**

The *Columbia Gas Systems Inc.* case involved a very large debtor and its subsidiary companies, with assets exceeding $6 billion.[24] The bankruptcy court excused compliance with § 345(b), and on appeal to the Third Circuit, the Circuit concluded the bankruptcy court had no discretion to excuse compliance with § 345(b) based on the clear and unambiguous language of that section.[25] The "cause" exception was specifically added to override that conclusion, made in a case very different than the one at hand.

Finally, the cases addressing § 345(b) rarely excuse compliance completely; rather, they implement procedures to excuse strict compliance so the funds at issue are protected for creditors.[26] The plain language of the statute, the legislative history, and the case law analyzing § 345(b) all support this Court's conclusion there is no "cause" in the current record to completely excuse compliance at this point.[27] This is not the type of debtor for which Congress added the "cause"

---

[24] *In re Columbia Gas Sys. Inc.*, 33 F.3d 294, 295 (3d Cir. 1994).

[25] *Id.* at 302-03.

[26] Section 345(b) was "designed to reduce" risk to creditors, who are "often the residual claimants of the accounts and thus the parties bearing the ultimate risk of loss—despite their typical lack of control over how the funds are held." *In re King Mountain Tobacco Co.*, 623 B.R. 323, 328-29 (Bankr. E.D. Wash. 2020). *See also In re Diocese of Buffalo, N.Y.*, 621 B.R. 91, 93 (Bankr. W.D.N.Y. 2020) ("Commercial enterprises derive income mostly from operations. Typically, depository accounts serve as a tool to facilitate business activity. Any loss of value would deprive the estate of money needed for the continuation of operations and to address creditor claims. Section 345(b) of the Bankruptcy Code aims to fulfill the salutary goal of assuring the preservation of account principal. For most businesses, compliance is fully consistent with the fiduciary duties of a trustee for the benefit of creditors.").

[27] As noted by *Collier on Bankruptcy*, the "legislative history suggests that cause will more likely exist in the cases involving larger, more sophisticated debtors." 3 *Collier on Bankruptcy* ¶ 345.04 (Richard Levin & Henry J. Sommer eds., 16th ed.).

**10**

exception to § 345(b), and even if Debtors did fit that mold, the Court would still require assurance the funds at issue were invested prudently and safely.

The Court recognizes § 345(b) must be read in conjunction with § 345(a). Section 345(a) states the debtor in possession "may make such deposit or investment of the money of the estate . . . as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." This section "vests a debtor with some discretion in investing money of the estate."[28] But § 345(a) is necessarily limited by § 345(b).[29] There must be cause to excuse compliance with that section, and no cause has been established herein.

### III. Conclusion

Based on the current record, the U.S. Trustee's motion to compel compliance with § 345(b)[30] is granted. Debtors are directed to diligently pursue compliance with § 345(b) and work with the U.S. Trustee to ensure the requirements of § 345(b) are met.

If Debtors are unable as a practical matter to ensure strict compliance with § 345(b) within thirty days of this Order, then Debtors should file a notice so

---

[28] *In re Ditech Holding Corp.*, 605 B.R. at 16.

[29] *See, e.g.*, *In re King Mountain Tobacco Co.*, 623 B.R. at 328 ("Section 345(b) limits the reach of section 345(a) by detailing specific requirements regarding counterparties to a bankruptcy trustee's deposit or investment transactions."); 3 *Collier on Bankruptcy* ¶ 345.01 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("Although section 345(a) provides a trustee with some latitude as to whether to invest funds of the estate, section 345(b) imposes burdens on the party with whom the funds may be invested, limiting, as a practical matter, the investments a trustee can make."); *see also id.* ¶ 345.03 ("[W]hile section 345(a) affords the trustee some flexibility to invest funds, section 345(b) significantly curtails that discretion as a practical matter.").

[30] Doc. 85.

11

indicating and detailing the steps undertaken to attempt compliance. If the U.S. Trustee remains unsatisfied, it should file a response within fifteen days of Debtors' notice, providing the Court with the specific steps the U.S. Trustee contends should be taken to meet the requirements of § 345(b).

**It is so Ordered.**

# # #